IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 17-cr-197-WJM

UNITED STATES OF AMERICA

          Plaintiff,

v.

1. CHRISTOPHER PAUL KELLY,

          Defendant,

---

## PLEA AGREEMENT AND STATEMENT OF FACTS
## RELEVANT TO SENTENCING

---

The United States of America, by and through Pegeen D. Rhyne, Assistant United States Attorney for the United States Attorney's Office for the District of Colorado (the "government"), and the defendant Christopher Paul Kelly ("Kelly" or the "defendant"), personally and by counsel, Deputy Federal Public Defender Mary Butterton, submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1.

### I.   AGREEMENT

1.      The defendant agrees to plead guilty to the single-count of the Indictment, charging tax evasion, in violation of 26 U.S.C. § 7201.

2.      The defendant agrees to pay the $100 special monetary assessment applicable to these counts at or before the time of sentencing.

3.      The defendant agrees that his sentence will include an order of restitution



Court Exhibit
1

2

in an amount of $929,098.39 to be paid to the Internal Revenue Service.

4.     The defendant agrees that nothing in this agreement shall limit the IRS in its lawful examination, determination, assessment, or collection of any taxes, penalties or interest due from the defendant for the time period covered by this agreement, or for any other time period for which the civil statues of limitations on assessment and collection remain open at this date.   The defendant also agrees that this agreement, or any judgment, order, release, or satisfaction issued in connection with this agreement, will not satisfy, settle, or compromise the defendant's obligation to pay the balance of any remaining civil liabilities, including tax, additional tax, additions to tax, interest, and penalties, owed to the IRS for the time period covered by this agreement or any other time period for which the civil statute of limitations remains open at this date.

5.     The defendant agrees that he will sign any IRS forms deemed necessary by the IRS to enable the IRS to make an immediate assessment of the "tax loss" herein agreed-upon, that is:

| Tax Year | Assessed Tax as of 9/27/17 | Total Penalties | Total Interest as of 9/27/17 | Balance |
|---|---|---|---|---|
| 2006 | $189,153.27 | $43,586.50 | $113,375.97 | $346,115.74 |
| 2007 | $329,491.45 | $64,940.50 | $144,329.74 | $538,761.69 |
| 2012 | $16,808.0 | $4191.50 | $2,583.52 | $23,583.02 |
| 2013 | $15,037.00 | $3,693.00 | $1,907.94 | $20,637.94 |
| TOTAL | $550,489.72 | $116,411.50 | $262,197.17 | $929,098.39 |

He also agrees not to file any claim for refund of taxes represented by any amount of restitution paid pursuant to this agreement, and to file complete and accurate

3

tax returns for any outstanding years for which returns have not as yet been filed.

6.     The government agrees that the defendant shall be awarded the additional 1-level reduction for acceptance of responsibility, pursuant to Section 3E1.1(b) of the Sentencing Guidelines, without further written motion by the government.

7.     The defendant reserves the right to request a variant sentence.

8.     This plea agreement is made pursuant to Rule 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure.

## II.  ELEMENTS OF THE OFFENSE

9.     The parties agree that the elements of the tax evasion offense charged in the Indictment to which this plea is being tendered are as follows:

A.     The defendant owed substantial income tax;

B.     The defendant intended to evade and defeat payment of that income tax;

C.     The defendant committed an affirmative act in furtherance of this intent, as described in the indictment; and

D.     The defendant acted willfully, that is, with the voluntary intent to violate a known legal duty.[1]

## III. STATUTORY PENALTIES

10.     The maximum statutory penalty for a violation of 26 U.S.C. § 7201 is: not more than 5 years of imprisonment, a fine of not more than the greater of $250,000, or

---

[1] Tenth Circuit Pattern Jury Instructions, Criminal 2.92 (2011).

4

both; not more than 3 years of supervised release; restitution in the amount of

$929,098.39; and a $100 special assessment fee.

11.     If probation or supervised release is imposed, a violation of any condition

of probation or supervised release may result in a separate prison sentence and

additional supervision.

## IV.   COLLATERAL CONSEQUENCES

12.     The conviction may cause the loss of civil rights, including but not limited

to the rights to possess firearms, vote, hold elected office, and sit on a jury.

## V.   STIPULATION OF FACTS

13.     The parties agree that there is a factual basis for the guilty plea that the

defendant will tender pursuant to this plea agreement. That basis is set forth below.

Because the Court must, as part of its sentencing methodology, compute the advisory

guideline range for the offense of conviction, consider relevant conduct, and consider

the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below

which are pertinent to those considerations and computations. To the extent the parties

disagree about the facts set forth below, the stipulation of facts identifies which facts are

known to be in dispute at the time of the execution of the plea agreement.

14.     This stipulation of facts does not preclude either party from hereafter

presenting the Court with additional facts which do not contradict facts to which the

parties have stipulated and which are relevant to the Court's guideline computations, to

other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

15.     The parties agree that relevant conduct began in July 2007.

16.     The parties agree as follows:

5

From 2001 through 2015, defendant Christopher Kelly operated merchant card services businesses, a type of business that sells vendors the ability to accept credit card payments.   Starting in 2011, Kelly owned a merchant card service business called Mile High Merchant Group, EIN xx-xxx3177.   Starting in February 2012, Kelly partnered with K.T. in a merchant card service business called Imax Business Solutions Denver, LLC ("IMAX"), and Kelly made Mile High Merchant Group a "dba" of IMAX.

On July 16, 2007, Kelly's accountant provided KELLY with a copy of Kelly's U.S. Individual Income Tax Return, Form 1040, for the tax year 2006, to be filed with the Internal Revenue Service ("IRS") and reviewed it with KELLY.   This tax return reported a tax due and owing of $195,916 and an estimated tax penalty of $6,600.   Because of the tax due and owing, Kelly intentionally did not file this tax return with the IRS until on or about October 1, 2012.

According to Kelly, from 2008 through 2009, Kelly owned a merchant card service business that was defrauded by a customer for nearly four million dollars. According to Kelly, that fraud caused Kelly to lose that business and suffer a large financial loss, including foreclosure on several homes and the ruin of his personal credit score.

In August of 2009, KELLY cashed out the entire valued of his Massachusetts Mutual Life Insurance account in the amount of $18,670.92; Kelly did this in part to remove the IRS's ability to place a levy on this asset and in part to pay his personal and business expenses.

On December 8, 2009, an IRS Revenue Officer ("RO") contacted Kelly and told him that the IRS did not show Kelly's returns for 2001, 2002, 2005, 2006, 2007 and

6

2008 as being filed.   Kelly stated that he knew that 2007 and 2008 were not yet filed, but he was not sure why the others had not been filed. Kelly called the RO back on December 15, 2009 and stated that his accountant would have 2005 and 2006 returns done the next day.   The RO informed Kelly that the IRS had already filed a substitute return for Kelly in 2008 for tax year 2005 in which the IRS assessed Kelly with a substantial tax due and owing.   Based on the taxes owed on that 2005 substitute return, the IRS engaged in collection efforts from at least December 2009 through May 2013 and levied a number of Kelly's assets.   As a result of these levies and credits from overpayments in other tax years, Kelly eventually paid his 2005 tax balance, including penalties and interest, of over $209,000.

In June of 2010, KELLY withdrew the $34,060.81 balance of his 401(k) account through Banctek Solutions held by John Hancock as the Trustee; Kelly did this in part to remove the IRS's ability to place a levy on this asset and in part to pay his personal and business expenses.

Between 2008 and the middle of 2015, despite Kelly's knowledge of his unpaid tax debt, Kelly continued his practice of purchasing or leasing expensive automobiles and renting expensive homes as his personal residence.   Kelly states that he did not own any properties during this time because he did not have a strong enough credit score to receive a mortgage.

In October of 2011, after the IRS levied Kelly's U.S. Bank account No. x-xxx-xxxx-4911, Kelly intentionally discontinued making deposits into that account, causing the account to become overdrawn.   US Bank closed the account approximately two months later.   From at least 2011 through at least the end of 2013, Kelly used a

7

business bank account controlled by his significant other to deposit much of his income and pay many of their personal expenses.   Also, throughout 2012 and in January 2013, Kelly caused a number of his personal expenses to be paid directly by an account held by Mile High Merchant Group, including rent on his personal residence, insurance, and credit card bills.

On January 1, 2012, Kelly sent a letter to Signapay, a business associate that paid money to Mile High Merchant Group, stating that Kelly and Mile High Merchant Group were "transferring and assigning all liabilities and assets to Imax Business solutions LLC and [K.T.] who is the sole managing member."   When the IRS filed a levy with Signapay on October 16, 2012, the VP of Operations for Signapay told the IRS that Kelly had sold his assets to IMAX.   As a result of receiving this information from Signapay, the IRS cancelled the levy that had been filed with Signapay.   Signapay continued to pay IMAX substantial sums in 2012 and 2013.

On February 1, 2012, Kelly received from his accountant a copy of his U.S. Individual Income Tax Return, Form 1040, for the tax year 2007.   This tax return reported a tax due and owing of $285,414 and an estimated tax penalty of $10,652. On March 26, 2012, Kelly filed this Form 1040 for the tax year 2007 with the IRS.

On April 15, 2013, KELLY caused to be filed with the IRS his U.S. Individual Income Tax Return, Form 1040, for the tax year 2012.   This tax return reported a tax due and owing of $16,766.

**Affirmative Act of Evasion:**   On March 6, 2012, Kelly falsely told an IRS Revenue Officer that Kelly's most recent business was purchased by Mile High Merchant Group and that Kelly was now a W-2 employee for Mile High Merchant Group.

8

In fact, as Kelly knew when he made the statement, Kelly continued to have an ownership interest in Mile High Merchant Group and IMAX, and Kelly was not simply a W-2 employee. In making this false statement, Kelly intended to mislead the IRS and to conceal his assets from the IRS.

**Additional Affirmative Act of Evastion:** On November 22, 2013, Kelly caused a check from Mile High Merchant Groups payable to Kelly in the amount of $4,500 to be deposited into a bank account controlled by his significant other. This check was income to Kelly, and Kelly intentionally had this income deposited into his significant other's bank account, in part, to hide it from the IRS.

## VI.    ADVISORY GUIDELINE COMPUTATION AND 3553 ADVISEMENT

17.    The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies in bold the matters which are in dispute, if any.

A.    The base guideline is Section 2T1.1, with a base offense level of 20 because the tax loss is more than $550,000 and less than $1,500,000.

B.    The defendant should receive a 3-level downward adjustment for

9

timely acceptance of responsibility.   The resulting offense level would be 17.

C.      The parties understand that the defendant's criminal history computation is tentative.   The criminal history category is determined by the Court based on the defendant's prior convictions. Based on information currently available to the parties, it is estimated that the defendant's criminal history category would be I.

D.      The career offender/criminal livelihood/armed career criminal adjustments would not apply.

E.      The advisory guideline range resulting from these calculations is 24-30 months.   However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level(s) estimated above could conceivably result in a range from 24 months (bottom of Category I) to 60 months (the statutory maximum for the offense).   The guideline range would not exceed, in any case, the statutory maximum applicable to the count of conviction.

F.      Pursuant to guideline § 5E1.2, assuming the estimated offense level above, the fine range for this offense would be $10,000 to $95,000, plus applicable interest and penalties.

G.      Pursuant to guideline § 5D1.2, if the Court imposes a term of supervised release, that term is at least 1 year, but not more than 3 years.

10

H.     Pursuant to guideline §5E1.1(a)(1), the Court shall enter a restitution order for the full amount of the victim's loss, which the parties agree will be an amount of $929,098.39.

18.     The parties understand that although the Court will consider the parties' estimate, the Court must make its own determination of the guideline range. In doing so, the Court is not bound by the position of any party.

19.     No estimate by the parties regarding the guideline range precludes either party from asking the Court, within the overall context of the guidelines, to depart from that range at sentencing if that party believes that a departure is specifically authorized by the guidelines or that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the United States Sentencing Commission in formulating the advisory guidelines. Similarly, no estimate by the parties regarding the guideline range precludes either party from asking the Court to vary entirely from the advisory guidelines and to impose a non-guideline sentence based on other 18 U.S.C. § 3553 factors.

20.     The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

11
## VII.  ENTIRE AGREEMENT

21.    This document states the parties' entire agreement. There are no other

promises, agreements (or "side agreements"), terms, conditions, understandings, or

assurances, express or implied. In entering this agreement, neither the government nor

the defendant has relied, or is relying, on any terms, promises, conditions, or

assurances not expressly stated in this agreement.

12/7/2017
_____
Date

CHRISTOPHER PAUL KELLY
Defendant

12/7/2017.
_____
Date

Mary Butterton
Attorney for Defendant KELLY

12/7/17
_____
Date

Pegeen D. Rhyne
Assistant U.S. Attorney