IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.  17-cr-00197-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CHRISTOPHER PAUL KELLY,

    Defendant.

---

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
FOR STATUTORY SENTENCE AND SENTENCING STATEMENT [Doc. # 38]**

---

The United States of America, by and through Pegeen D. Rhyne, Assistant United States Attorney, hereby responds to Defendant's Motion for Statutory Sentence and Sentencing Statement [Doc. # 38].  At the July 11, 2018, sentencing hearing, the government will request that the Court sentence the defendant to 24 months in prison.  The defendant requests that the Court instead impose a variant sentence of five years of probation, to include 6 months of home detention and 500 hours of community service, based upon arguments framed by the factors set forth in 18 U.S.C. § 3553(a).  [Doc. # 38 at pg. 1].  The government opposes this request.

### Alleged Fraud Against Mr. Kelly Cannot be Confirmed

Defendant Kelly alleges that he was the victim of a $4,000,000-fraud in 2008.  The government has been unable to confirm this claim.  IRS SA Mindy Wilgus has spoken to both the Assistant United States Attorney and the case agent who prosecuted Jason Taylor in Utah in case No. 2:14-cr-00137-DC.  Mr. Taylor was prosecuted for

access device fraud and aggravated identity theft. [2:14-cr-00137-DC at Doc. # 29]. Neither the AUSA nor the case agent were familiar with defendant Kelly or his company. The government is not aware of any police report filed by defendant Kelly or any law enforcement interview of defendant Kelly pertaining to this alleged fraud. The only letters provided by defendant Kelly to the Court about this alleged fraud come from his girlfriend/wife, Meghan Kelly, and Jennifer Logsdon, an employee of defendant Kelly's who assisted in his tax evasion by allowing defendant Kelly to both lease a car and buy a car in her name. Her credibility is questionable. Defendant Kelly's self-serving claim about this fraud does not warrant a variant sentence. Additionally, because defendant Kelly's criminal conduct predated this alleged fraud, he cannot use it as an excuse for his criminal choices.

### *Section 3553(a)(1) -- nature and circumstances of the offense and the history and characteristics of the defendant*

From at least 2007 through 2013, the defendant evaded the payment of the $550,489.72 of the taxes that he owed for the tax years 2006, 2007, 2012, and 2013. His crime was serious and spanned seven years. With interest and penalties, his tax loss is $929,098.39. During this time, the defendant lived in expensive houses and drove expensive cars. [Doc. # 25 at pg 6]. Defendant Kelly's claim that he was forced to do this because he was reliant on friends of friends who only had access to expensive houses and cars [doc. # 38 at pg. 4] is offensive. Plenty of people with bad credit manage to rent modest apartments, drive inexpensive cars, or take public transportation. Defendant Kelly simply did not want to give up his lifestyle.

Additionally, defendant Kelly continues to violate tax laws. To date, defendant Kelly has not filed personal federal income tax returns for the tax years 2014-2017.

Defendant Kelly reported to the probation officer that since February 2016 defendant Kelly has been employed as the President of Eschelon Financial Corporation and has "typically" earned $12,000 per month. [Doc. # 40 at ¶ 61]. Given this, defendant Kelly had an obligation to file personal federal income tax returns for at least the tax years 2016 and 2017. His failure to do so demonstrates that he has not learned his lesson as a result of the instant case.

As to this defendant's background, he describes a "great" childhood, growing up in an "middle class" family, and attending some college. [Doc. # 40 at ¶ ¶ 46 & 58]. Criminals from the middle "who have the education and training that enables people to make a decent living without resorting to crime are more rather than less culpable than their desperately poor and deprived brethren in crime." *United States v. Stefonek*, 179 F.3d 1030, 1038 (7th Cir. 1999). It was not the defendant's lot in life that led him to commit the instant offense; his crime appears to be motivated by greed. Starting in at least 2007, defendant Kelly decided that he did not want to pay his taxes.

The nature and circumstances of the instant offense, and the history and characteristics of this defendant support a sentence of 24 months in prison.

### *Section 3553(a)(2) – seriousness of the offense, promote respect for the law, just punishment, and adequate deterrence*

All of these considerations are served through a 24-month sentence. Defendant Kelly attempts to minimize his offense by claiming that it only resulted in a monetary loss to the IRS. [Doc. # 38 at ECF 42 at 16]. By framing the issue in this manner, defendant Kelly ignores the fundamental importance of paying taxes. Our country could not run without a functional system of taxation. Because the IRS does not have the resources to police all tax payers, it must rely on people honoring their statutory

3

obligations. When a tax payer refuses to do this, he harms one of the cornerstones of our society at the expense of all other members of society. In order to properly incentivize all tax payers to honor their statutory obligation to pay taxes, general deterrence requires a significant sentence in this case.

The defendant cites to a study for the proposition that the severity of sentences does not enhance "deterrent effects." [Doc #38 at pg. 11]. However, certain courts disagree. "Because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." *United States v. Musgrave,* 761 F.3d 602, 609 (6th Cir. 2014) (citing other cases from the 6th Circuit and one from the 11th Circuit); *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) ("Defendants in white collar crimes often calculate the financial gain and risk of loss, and white collar crime can therefore be affected and reduced with serious punishment"). A custodial sentence is warranted in this case to deter this defendant from future crimes, and to deter others from violating the tax laws. Indeed, the court in *United States v. Engle*, 592 F.3d 495 (4th Cir. 2010), noted the importance of general deterrence when sentencing in tax cases: "Criminal tax prosecutions serve to punish the violator and promote respect for the tax laws. Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines." *Id.* at 501-02 (quoting U.S.S.G. Ch. 2, Pt. T, introductory cmt. (1998)).

### *Section 3553(a)(4) – the advisory guideline range*

The defendant also makes an "empirical data" argument, claiming that the Court

should disagree with the guidelines because the Commission failed to rely on "empirical data or national experience" in promulgating or amending §§ 2T1.1 & 2T4.1. [Doc. 38 at pg 7]. The Tenth Circuit has made clear that regardless of any alleged lack of empirical support, it will apply a presumption of reasonableness to a within-guidelines sentence when reviewing it on appeal. *United States v. Franklin,* 785 F.3d 1365, 1370 (10th Cir. 2015) (quotation omitted); *see also United States v. Grigsby*, 749 F.3d 908, 910–11 (10th Cir. 2014) ("[e]mpirically based or not, the Guidelines remain the Guidelines.... The Supreme Court made clear in *Kimbrough v. United States* that 'a district judge must include the Guidelines range in the array of factors warranting consideration,' even if the Commission did not use an empirical approach in developing sentences for the particular offense. Accordingly, we will not reject a Guidelines provision as "unreasonable" or "irrational" simply because it is not based on empirical data") (internal citations omitted).

## CONCLUSION

The government requests that the Court sentence the defendant to 24 months in prison, 3 years of supervised release, order the defendant to pay $929,098.39 in restitution to the Internal Revenue Service, and impose all of the special conditions of supervised release as proposed by the probation officer.

Respectfully submitted this 3rd day of July, 2018.

ROBERT C. TROYER
United States Attorney


By: *Pegeen D. Rhyne*
PEGEEN D. RHYNE
Assistant U.S. Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado 80202
(303) 454-0100
(303) 454-0409 (fax)
Pegeen.Rhyne@usdoj.gov
Attorney for Government

6

## CERTIFICATE OF SERVICE

  I hereby certify that on July 3, 2018, I electronically filed the foregoing **GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR STATUTORY SENTENCE AND SENTENCING STATEMENT [Doc. # 38]** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

              *s/ Dee Boucher*
              United States Attorney's Office